UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
WESTERN DIVISION

ENNIE RAY MCGLOWN, JR.,                    )      Case No. 3:10CV2182
                                           )
                Petitioner,                )      PATRICIA A. GAUGHAN
                                           )
        v.                                 )      Magistrate Judge George J. Limbert
                                           )
ED SHELDON[1], Warden,                     )
                                           )
                Respondent.                )      **Report and Recommendation**
                                           )      **of Magistrate  Judge**


        On September 16, 2010, Petitioner Ennie Ray McGlown, Jr. ("Petitioner"), acting *pro se*,

filed a petition for a writ of  habeas corpus pursuant to 28 U.S.C. §2254.  ECF Dkt. #1.  Petitioner

seeks relief for alleged constitutional violations that occurred as a result of his conviction and

sentence in the Lucas County, Ohio Court of Common Pleas,  for one count of  gross sexual

imposition, in violation of R.C. 2907.05(A)(4), and six counts of rape, in violation of R.C.

2907.02(A)(2). On March 15, 2011, Respondent Ed Sheldon ("Respondent"), Warden of Toledo

Correctional Institution, where Petitioner is incarcerated, filed an answer/return of writ.  ECF Dkt.

#8.  On June 3, 2011, Petitioner filed his traverse.  ECF Dkt. #12.  For the following reasons, the

undersigned RECOMMENDS that the Court DISMISS the petition in its entirety with prejudice:

---

        [1]Petitioner is housed at Toledo Correctional Institution, where Ed Sheldon is the warden.  *See*
*www.drc.ohio.gov* "[T]he default rule is that the proper respondent is the warden of the facility where the
prisoner is being held . . ." *Rumsfeld v. Padilla,* 542 U.S. 426, 435 (2004). Accordingly, the Petition should
be amended to name Ed Sheldon as respondent.

I.      **<u>SYNOPSIS OF THE FACTS</u>**

The Sixth District Court of Appeals of Ohio set forth the relevant facts and procedural history of this case on direct appeal.  ECF Dkt. #8-1 at 196-210.[2]  These binding factual findings "shall be presumed to be correct," and Petitioner has "the burden of rebutting the presumption of correctness by clear and convincing evidence."  28 U.S.C. §2254(e)(1); *Warren v. Smith*, 161 F.3d 358, 360-61 (6th Cir. 1998), *cert. denied*, 119 S.Ct. 2403 (1999):

> {¶6} Appellant married the victims' mother, K., in May 2004 after appellant, K., the victims, and other extended family members had lived together for some time.  In 2002, the family lived on Austin Street in Toledo, Ohio.  A.J., who was born in May 1988, testified that in 2002, sometime after her fourteenth birthday, appellant approached her and asked how she would feel about having sex with him.  A.J. testified that when she did not respond appellant continued to ask her.  Sometime thereafter, she had fallen asleep on the living room couch.  That night, she was awakened by appellant, who took off her pants and inserted his penis into her anus.  Appellant also threatened her, warning that if she told anyone he would harm her little sister, T.J.  A.J. testified that after this first incident, appellant sexually assaulted her on a regular basis, forcing her to engage in vaginal intercourse. He also performed oral sex on her.

> {¶ 7} After the family moved to Fulton Street, also in Toledo, in 2003, appellant began forcing appellant to perform fellatio on him. A.J. stated that this first occurred when she was in her freshman year of high school.  A.J. testified that all of the incidents occurred in the living room at night.  Appellant had bought her a cell phone and would call her in her upstairs bedroom and summon her downstairs or he would use a broom to hit the bathroom ceiling just under A.J.'s bedroom to signal her.  Finally, in the summer of 2005, K. left appellant and K., the victims, and M., the victims' brother, moved out of the house on Fulton Street and into the house on Park Street where other members of appellant's family lived.  One day in July, while at the house on Park Street, A .J. was watching the Oprah Winfrey show when the topic was rape victims confronting their rapist for the first time.  After seeing the show, A.J. realized that she had to tell her mother about the incidents with appellant.  Her mother then called the police and A.J. reported her stepfather's actions to Officer Danielle Kasprzak and Detective Regina Lester.  Prior to this, A.J. never told anyone about the incidents, although she did describe an incident in which appellant sexually assaulted both her and her younger sister T.J. at the same time.

> {¶ 8} T.J. also testified at the trial below.  T.J. was born in May 1991, and testified that appellant first molested her when she was 13 and the family lived on Fulton Street. [FN 1.] T.J. stated that appellant had bought her a cell phone the day after Christmas.  A short time thereafter, appellant called her at approximately 2:30 a.m. and told her to come downstairs.  When she got to the living room, all of the lights were off.  Appellant then told her that because she had been involved in rumors that he had been messing with A.J., he was going to do it to her too to teach her a lesson.  He then ordered her to remove her clothes, except for her underwear, and to lie on

---

[2]Page numbers in this report and recommendation refer to the Page ID# in the electronic filing system.

the floor.  Appellant then watched her lying on the floor while he fondled himself. T.J. testified that the next night, again at around 2:30 a.m., appellant called her again on her cell phone and summoned her to the living room.  T.J. stated that that night, and many nights thereafter, appellant would force her to kiss his chest and touch his penis while he ejaculated.  He also forced her to perform oral sex on him and he would perform oral sex on her.  Although appellant tried to have intercourse with T.J., T.J. testified that she always pushed him away. T.J. also stated that on at least two occasions appellant forced her and her sister A.J. to engage in sexual activity with him at the same time.  Finally, T.J. testified that on June 13, 2005, after watching the Oprah Winfrey show, she and A.J. told their mother what appellant had been doing to them.

FN1. Although T.J. testified that she was 13 years old when appellant first molested her, other evidence submitted at the trial below indicates that the first incident occurred before T.J.'s thirteenth birthday.

*State v. McGlown,* 2009 WL 1263173, *1, ECF Dkt. #8-1 at 197-198.

## II.  **PROCEDURAL HISTORY**

### A.  **State Trial Court**

During the September term of 2005, Petitioner was indicted in the Lucas County Court of Common Pleas for one count of gross sexual imposition of a child under the age of 13  ("GSI") in violation of R.C. §2907.05(A)(4)(Count One); and six counts of rape in violation of R.C. §2907.02(A)(2) (Counts Two through Seven). ECF Dkt. #8-1 at 95.

On March 9, 2007, a jury found Petitioner guilty on all counts.  *Id.* at 101. Prior to sentencing, on March 12, 2007, Petitioner filed a motion for new trial, based upon his characterization of the victims' testimony as unbelievable due to the number of people living at the residence during the relevant time period.[3]  *Id.* at 103-104. On April 19, 2007, the trial court denied

---

[3]The motion for new trial reads, in pertinent part, "There is now [sic] way possible that one individual could have sex two times a night, night in and night out while there are family members sleeping on the couch in the living room who have responsibility of changing their diabetic mother twice a night."  ECF Dkt. #8-1 at 104.  This argument was raised at trial.  According to the Sixth District's opinion:

> Finally, at the trial below, appellant called two witnesses in his defense. His uncle, Arvie McCormick, and his mother, Bonnie McGlown, both testified as to the numerous people that lived with appellant, K. and the victims during the time period when the victims alleged the abuse had taken place. Through this testimony, appellant attempted to establish that because there were so many people living in the house, the abuse could not have happened as the girls reported.

*McGlown,* supra, at *4, ECF Dkt. #8-1 at 204.

Petitioner's motion for new trial and sentenced him to a term of imprisonment of three years on Count One, and six years on each of the remaining six counts.  The three-year sentence on Count One was to be served concurrently with the sentences on rape counts, however the six-year sentences on the rape counts were to be serve consecutively, for an aggregate term of imprisonment of thirty-six years. *Id.* at 108-109.  Further, Petitioner was identified as a sexually oriented offender, and annual address notification and verification was ordered for ten years.  *Id.*

### B. __Direct Appeal__

On April 24, 2007, Petitioner, through his trial counsel, filed a notice of appeal to the Ohio Court of Appeals for the Sixth District and a motion for appointment of trial counsel. *Id.* at 111-112. Petitioner, raised the following assignments of error in his appellate brief:

ASSIGNMENT OF ERROR I

DEFENDANT'S CONSTITUTIONAL RIGHT OF DUE PROCESS WAS VIOLATED BY THE TRIAL COURT ALLOWING THE TOLEDO POLICE DETECTIVE TO TESTIFY AS AN EXPERT.

ASSIGNMENT OF ERROR II

THE TRIAL COURT ERRED IN PERMITTING THE POLICE DETECTIVE TO TESTIFY AS IT ONLY WAS PRESENTED TO BOLSTER THE VICTIMS TESTIMONY.

ASSIGNMENT OF ERROR III

DEFENDANT'S RIGHT TO A FAIR TRIAL WAS VIOLATED BY PROSECUTORIAL MISCONDUCT.

*Id.* at 114.

On May 8, 2009, the Sixth District Court of Appeals affirmed the trial court's judgment of conviction and sentence. *Id.* at 196-210.

### C. __Supreme Court of Ohio__

On June 19, 2009, Petitioner, acting *pro se*, filed a timely appeal to the Supreme Court of Ohio. *Id.* at 211-213.  In his memorandum in support of jurisdiction, Petitioner raised the following propositions of law:

-4-

PROPOSITION OF LAW I.

THE TRIAL COURT DENIES A CRIMINAL DEFENDANT HIS RIGHTS TO DUE PROCESS UNDER THE CONSTITUTION OF THE UNITED STATES AND OHIO, WHEN IT PREJUDICIALLY PERMITS THE TESTIMONY OF AN UNQUALIFIED EXPERT WITNESS.

PROPOSITION OF LAW II.

A CRIMINAL DEFENDANT IS DENIED HIS RIGHTS TO A FAIR TRIAL & DUE PROCESS UNDER THE CONSTITUTION OF THE UNITED STATES AND OHIO, WHEN A PROSECUTOR COMMITS PROSECUTORIAL MISCONDUCT BY INTERJECTING HIS OPINION ABOUT THE VICTIM.

*Id.* at 221-224.

On September 30, 2009, the Ohio Supreme Court denied leave to appeal and dismissed the case because it did not involve any substantial constitutional question.  *Id.* at 243.

### D.    Motion to Vacate, Set Aside, or Modify Sentence

During the pendency of his direct appeal, on August 4, 2008, Petitioner filed a motion to vacate, set aside, or modify the judgment of conviction and sentence in the Lucas County Court of Common Pleas.  According to Respondent's return of writ, and a review of the Lucas County Court of Common Pleas online docket, no response was filed by the state and the trial court has not issued a ruling on the motion as of the date of this Report and Recommendation.

### E.    Motion for Final Judgment

Also during the pendency of his direct appeal, on March 12, 2009, Petitioner, acting *pro se*, filed a motion for final judgment in the Lucas County Court of Common Pleas, based upon the fact that the judgment entry did not state the basis of his convictions, and, therefore, was void pursuant to *State v. Baker*, 119 Ohio St.3d 197 (2008). *Id.* at 261-268. On July 29, 2010, the state filed a brief conceding error on the part of the trial court in fashioning the judgment entry, and suggested the error could be corrected by a *nunc pro tunc* entry.  *Id.* at 269-274. On August 9, 2010, the trial court entered a *nunc pro tunc* judgment entry, which read, in pertinent part:

On March 9, 2007, the Defendant was found Guilty by Jury and Convicted of the offense of Count One, Gross Sexual Imposition, in violation of R.C. 2907.05(A)(4), a felony of the third degree; Counts Two, Three, Four, Five, Six, and Seven, Rape, in violation of R.C. 2907.02(A)(2), each a felony of the first degree.

*Id.* at 282-285.

Petitioner filed a reply on August 17, 2010. *Id.* at 275-281. As a consequence, the trial court issued a second *nunc pro tunc* judgment entry on September 16, 2010, which read, in pertinent part:

> The Court finds that on March 9, 2007, the Defendant was found Guilty by Jury and convicted of GROSS SEXUAL IMPOSITION, Count 1, a violation of R.C. 2907.05(A)(4), a felony of the 3rd degree; of RAPE, Count 2, a violation of R.C. 2907.02(A)(2), a felony of the 1st degree; of RAPE, Count 3, a violation of R.C. 2907.02(A)(2), a felony of the 1st degree; of RAPE, Count 4, a violation of R.C. 2907.02(A)(2), a felony of the 1st degree; of RAPE, Count 5, a violation of R.C. 2907.02(A)(2), a felony of the 1st degree; of RAPE, Count 6, a violation of R.C. 2907.02(A)(2), a felony of the 1st degree; and of RAPE, Count 7, a violation of R.C. 2907.02(A)(2), a felony of the 1st degree.

*Id.* at 282-285. Petitioner filed a timely notice of appeal on October 8, 2010. *Id.* at 286. The state filed a timely cross appeal on October 18, 2010. *Id.* at 291-292. On December 14, 2010, Petitioner filed a motion to stay proceedings until legal appellate counsel could be appointed. *Id.* at 297-299. The state filed a motion to dismiss the cross-appeal on January 4, 2011. *Id.* at 300-303. The Sixth District dismissed the cross-appeal on January 10, 2011. *Id.* at 204. According to the Lucas County Court of Common Pleas online docket, on November 28, 2011, after counsel was appointed and a series of extensions of time were granted, Petitioner's counsel filed a brief pursuant to *Anders v. California*, 386 U.S. 738 (1967). In an *Anders* brief, appellate counsel typically represents that, after review of the record, he or she could ascertain no arguably meritorious issues to present on appeal. The state filed a response brief on January 13, 2012. Petitioner filed a reply brief on February 13, 2012. As of the date of this order, no decision has been issued by the Sixth District.

### F.     Application to Reopen Appeal

During the pendency of his appeal to the Supreme Court, on August 4, 2009, Petitioner, acting *pro se,* filed a timely application to reopen his direct appeal pursuant to App.R. 26(B), raising the following assignments of error:

> ASSIGNMENT OF ERROR I
>
> APPELLANT RECEIVED INEFFECTIVE ASSISTANCE OF APPELLANT COUNSEL WHEN APPELLANT COUNSEL FAILED TO RAISE A GENUINE ISSUE RELATING TO THE INSUFFICIENCY OF THE EVIDENCE PRESENTED AT TRIAL.
>
> ASSIGNMENT OF ERROR II
>
> APPELLANT WAS DENIED THE EFFECTIVE ASSISTANCE OF APPELLANT COUNSEL WHEN APPELLANT COUNSEL FAILED TO PRESENT A GENUINE

-6-

CLAIM OF INEFFECTIVE ASSISTANCE OF TRIAL COUNSELS FAILURE TO CHALLENGE THE INDICTMENT FOR ITS SUFFICIENCY.

*Id.* at 246-250.  On October 22, 2009, the Sixth District denied Petitioner's application to reopen his appeal, because he had failed to make a colorable claim of ineffective assistance of counsel.  *Id.* at 255-260.  Petitioner did not appeal this decision to the Ohio Supreme Court.


### III.  **28 U.S.C. § 2254 PETITION**

On September 16, 2010, Petitioner, through counsel, filed the instant petition for a writ of habeas corpus.  ECF Dkt. #1.  Petitioner raises the following grounds for relief:

GROUND ONE:

PETITIONER'S CONSTITUTIONAL RIGHTS TO DUE PROCESS UNDER THE UNTIED STATES CONSTITUTION WAS VIOLATED, WHEN THE TRIAL COURT PREJUDICIALLY PERMITS TESTIMONY OF AN UNQUALIFIED EXPERT WITNESS.

GROUND TWO:

PETITIONER'S RIGHT TO A FAIR TRIAL AND DUE PROCESS UNDER THE CONSTITUTION OF THE UNITED STATES, WAS VIOLATED WHEN A PROSECUTOR COMMITS PROSECUTORIAL MISCONDUCT BY INTERJECTING ITS OPINION ABOUT A VICTIM TO SUSTAIN A GUILTY VERDICT.

GROUND THREE

PETITIONER WAS DENIED THE RIGHT TO EFFECTIVE ASSISTANCE OF APPELLATE COUNSEL ON HIS DIRECT APPEAL, WHEN THE RECORD DEMONSTRATED THAT DUE PROCESS OF LAW VIOLATION OCCURRED WHEN TRIAL COUNSEL'S FAILURE TO CHALLENGE THE SUFFICIENCY OF THE INDICTMENT VIOLATIONS OF THE SIXTH AND FOURTEENTH AMENDMENTS OF THE UNITED STATES CONSTITUTION

GROUND FOUR

PETITIONER WAS DENIED HIS RIGHT TO EFFECTIVE ASSISTANCE OF APPELLATE COUNSEL ON HIS DIRECT APPEAL, WHEN THE RECORD DEMONSTRATED THAT DUE PROCESS OF LAW VIOLATION OCCURRED WHEN THE STATE OF OHIO FAILED TO PRODUCE SUFFICIENT, SUBSTANTIAL, COMPETENT, RELIABLE EVIDENCE OF ALL OFFENSE(S) CHARGED IN THE INDICTMENT. VIOLATIONS OF THE SIXTH AND FOURTEENTH AMENDMENTS OF THE UNITED STATES CONSTITUTION.

ECF Dkt. #1.

### IV.    PROCEDURAL BARRIERS TO REVIEW

A petitioner must overcome several procedural barriers before a court will review the merits of a petition for a federal writ of habeas corpus.  As Justice O'Connor noted in *Daniels v. United States*, "Procedural barriers, such as statutes of limitations and rules concerning procedural default and exhaustion of remedies, operate to limit access to review on the merits of a constitutional claim."  532 U.S. 374, 381 (2001); *see also United States v. Olano*, 507 U.S. 725, 731 (1993).  However, the Supreme Court has also held that it would be in the interests of the parties and the courts for the merits of a petition to be addressed forthwith if it is clear that the applicant does not even raise a colorable federal claim. *Granberry v. Greer*, 481 U.S. 129, 135 (1987); *Prather v. Rees*, 822 F.2d 1418, 1421-22 (6th Cir. 1987) (lack of exhaustion was properly excused where petition was plainly meritless, the state had not addressed exhaustion, and disposition of the case would not offend federal-state comity).

### A.    Statute of Limitations

The Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA") statute of limitations period for filing a petition for a writ of federal habeas corpus is one year, and it begins to run on the date judgement became final.  28 U.S.C. §2244(d)(1).  The AEDPA statute of limitations is not at issue in this case.

### B.    Exhaustion of State Remedies

As a general rule, a state prisoner must exhaust all possible state remedies or have no remaining state remedies before a federal court will review a petition for a writ of habeas corpus. 28 U.S.C. § 2254(b) and (c); *see also Baldwin v. Reese*, 541 U.S. 27, 29 (2004).  The exhaustion requirement is satisfied "once the federal claim has been fairly presented to the state courts." *Franklin v. Rose*, 811 F.2d 322, 325 (6th Cir. 1987).  To exhaust a claim, a petitioner must present it "to the state courts under the same theory in which it is later presented in federal court."  *Wong v. Money*, 142 F.3d 313, 322 (6th Cir. 1998); *see also McMeans v. Brigano*, 228 F.3d 674, 681 (6th Cir. 2000).  General allegations of the denial of rights to a "fair trial" and "due process" do not "fairly present" claims that specific constitutional rights were violated.  *McMeans*, 228 F.3d at 681 citing *Petrucelli v. Coombe*, 735 F.2d 684, 688-89 (2d Cir. 1984).

In order to have fairly presented the substance of each of his federal constitutional claims to the state courts, the petitioner must have given the highest court in the state in which he was convicted a full and fair opportunity to rule on his claims. *Manning v. Alexander*, 912 F.2d 878, 881 (6th Cir. 1990). A petitioner fairly presents the substance of his federal constitutional claim to the state courts by: (1) relying upon federal cases that use a constitutional analysis; (2) relying upon state cases using a federal constitutional analysis; (3) phrasing his claim in terms of constitutional law or in terms sufficiently particular to allege the denial of a specific constitutional right; or (4) alleging facts that are obviously within the mainstream of constitutional law. *Clinkscale v. Carter*, 375 F.3d 430, 437 (6th Cir. 2004), quoting *Newton v. Million*, 349 F.3d 873, 877 (6th Cir. 2003); *see also Levine v. Torvik*, 986 F.2d 1506, 1516 (6th Cir. 1993) cert. denied, 509 U.S. 907 (1993)(quotation omitted). In *Harris v. Lafler*, the Sixth Circuit laid out the options that a district court may pursue in dealing with a petition that contains unexhausted claims:

> When faced with this predicament in the past, we have vacated the order granting the writ and remanded the case to the district court so that it could do one of four things: (1) dismiss the mixed petition in its entirety, *Rhines*, 544 U.S. at 274, 125 S.Ct. 1528; (2) stay the petition and hold it in abeyance while the petitioner returns to state court to raise his unexhausted claims, *id*. at 275, 125 S.Ct. 1528; (3) permit the petitioner to dismiss the unexhausted claims and proceed with the exhausted claims, id. at 278, 125 S.Ct. 1528; or (4) ignore the exhaustion requirement altogether and deny the petition on the merits if none of the petitioner's claims has any merit, 28 U.S.C. § 2254(b)(2).

553 F.3d 1028, 1031-32 (6th Cir. 2009). The Supreme Court has held that "the petitioner has the burden . . . of showing that other available remedies have been exhausted or that circumstances of peculiar urgency exist." *Darr v. Burford*, 339 U.S. 200, 218-19 (1950), *overruled in part on other grounds*, *Fay v. Noia*, 372 U.S. 391 (1963). A petitioner will not be allowed to present claims never before presented in the state courts unless he can show cause to excuse his failure to present the claims in the state courts and actual prejudice to his defense at trial or on appeal, or that he is actually innocent of the crime for which he was convicted. *Coleman v. Thompson*, 501 U.S. 722, 748 (1991).

### C.    Procedural Default

The procedural default doctrine serves to bar review of federal claims that a state court has declined to address when a petitioner does not comply with a state procedural requirement. *Wainwright v. Sykes*, 433 U.S. 72, 87 (1977).  In these cases, "the state judgment rests on independent and adequate state procedural grounds."  *Coleman,* 501 U.S. at 730.  For purposes of procedural default, the state ruling with which the federal court is concerned is the "last explained state court judgment." *Munson v. Kapture*, 384 F.3d 310, 314 (6th Cir. 2004) citing *Ylst v.Nunnemaker*, 501 U.S. 797, 805 (1991) (emphasis removed).  When the last explained state court decision rests upon procedural default as an "alternative ground," a federal district court is not required to reach the merits of a habeas petition. *McBee v. Abramajtys*, 929 F.2d 264, 265 (6th Cir. 1991).  In determining whether a state court has addressed the merits of a petitioner's claim, federal courts must rely upon the presumption that there is no independent and adequate state grounds for a state court decision absent a clear statement to the contrary.  *Coleman*, 501 U.S. at 735.

Applying this presumption, the Sixth Circuit Court of Appeals established a four-pronged analysis to determine whether a claim has been procedurally defaulted.  *Maupin v. Smith*, 785 F.2d 135 (6th Cir. 1986).  Under the *Maupin* test, a reviewing court must decide:

(1)    whether the petitioner failed to comply with an applicable state procedural rule;

(2)    whether the state courts actually enforced the state procedural sanction;

(3)    whether the state procedural bar is an "adequate and independent" state ground on which the state can foreclose federal review; and

(4)    if the above are met, whether the petitioner has demonstrated "cause" and "prejudice."

*Id.* at 138.

Under the first prong of *Maupin*, there must be a firmly established state procedural rule applicable to the petitioner's claim and the petitioner must not have complied with the rule. *Ford v. Georgia*, 498 U.S. 411, 423-24 (1991) (state procedural bar that is not "firmly established and regularly followed" cannot serve to bar federal judicial review); *Franklin v. Anderson*, 434 F.3d 412, 418 (6th Cir. 2006).  The question of whether a state procedural rule was "firmly established and

-10-

regularly followed" is determined as of the time at which it was to be applied. *Richey v. Mitchell*, 395 F.3d 660, 680 (6th Cir. 2005).

Under the second prong, the last state court to which the petitioner sought review must have invoked the procedural rule as a basis for its decision to reject review of the prisoner's federal claims. *Coleman v. Thompson*, 501 U.S. 722, 729-30 (1991) (appeal dismissed for lack of jurisdiction); *Richey*, 395 F.3d at 678 ("a lapsed claim survives if the state court overlooked the default and decided the claim anyway"); *Baze v. Parker*, 371 F.3d 310, 320 (6th Cir. 2004) (if a state court does not expressly rely on a procedural deficiency, then a federal court may conduct habeas review); *Gall v. Parker*, 231 F.3d 265, 310 (6th Cir. 2000) (even if issue is not raised below, where state supreme court clearly addresses the claim, no procedural bar arises); *Boyle v. Million*, 201 F.3d 711, 716-17 (6th Cir. 2000) (where a state appellate court characterizes its earlier decision as substantive, the earlier decision did not rely on a procedural bar; therefore, the cause and prejudice test does not apply).

Under the third prong, a state judgment invoking the procedural bar must rest on a state law ground that is both independent of the merits of the federal claim and is an adequate basis for the state court's decision. *Munson v. Kapture*, 384 F.3d 310, 313-14 (6th Cir. 2004).

Under the fourth prong, a claim that is procedurally defaulted in state court will not be reviewable in federal habeas corpus unless the petitioner can demonstrate cause for the default and actual prejudice as a result of the alleged violation of federal law, or that failure to consider the claim will result in a fundamental miscarriage of justice. *Coleman*, 501 U.S. at 751. "Cause" is a legitimate excuse for the default, and "prejudice" is actual harm resulting from the alleged constitutional violation. *Magby v. Wawrzaszek*, 741 F.2d 240, 244 (9th Cir. 1984), *cert. denied*, 490 U.S. 1068 (1985). If a petitioner fails to show cause for his procedural default, the reviewing court need not address the issue of prejudice. *Smith v. Murray*, 477 U.S. 527 (1986).

Simply stated, a federal court may review federal claims:

> that were evaluated on the merits by a state court. Claims that were not so evaluated, either because they were never presented to the state courts (i.e., exhausted) or because they were not properly presented to the state courts (i.e., were procedurally defaulted), are generally not cognizable on federal habeas review.

-11-

*Bonnell v. Mitchel,* 301 F.Supp.2d 698, 722 (N.D. Ohio 2004).  The above standards apply to the Court's review of Petitioner's claims.

## V.      STANDARD OF REVIEW

The undersigned further recommends that the Court find that the AEDPA governs this Court's review of the instant case because Petitioner filed his petition for the writ of habeas corpus pursuant to 28  U.S.C. § 2254 on September 16, 2010, well after the act's effective date of April 26, 1996.  *Harpster v. Ohio*, 128 F.3d 322, 326 (6th Cir. 1997), *cert. denied*, 522 U.S. 1112 (1998).  Under Section 2254, a state prisoner is entitled to relief if he is held in custody in violation of the United States Constitution or laws or treaties of the United States.  28 U.S.C. § 2254(d).

The AEDPA sets forth the standard of review for the merits of a petition for a writ of habeas corpus.  The AEDPA provides:

> (d)    An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim –
>
> (1)    resulted in a decision that was *contrary to*, or involved an *unreasonable application of*, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2)    resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d) (emphasis added).  In *Williams v. Taylor*, the Supreme Court clarified the language of 28 U.S.C. § 2254(d) and stated:

> Under the "contrary to" clause, a federal habeas court may grant the writ if the state court arrives at a conclusion opposite to that reached by this Court on a question of law or if the state court decides a case differently than this Court has on a set of materially indistinguishable facts.  Under the "unreasonable application" clause, a federal habeas court may grant the writ if the state court identifies the correct governing legal principle from this Court's decisions but unreasonably applies that principle to the facts of the prisoner's case.

*Williams v. Taylor*, 529 U.S. 362, 412-13 (2000).  Further, the Supreme Court declared that "a federal habeas court making the 'unreasonable application' inquiry should ask whether the state court's application of clearly established federal law was objectively unreasonable."  *Id.* Elaborating on the term "objectively unreasonable," the Court stated that "a federal habeas court may not issue

-12-

the writ simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly. Rather, that application must also be unreasonable." *Id.*; *see also Bailey v. Mitchell,* 271 F.3d 652, 655-56 (6th Cir. 2001).

The Sixth Circuit Court of Appeals offers the following guidelines for applying the AEDPA limitations:

> A.  Decisions of lower federal courts may not be considered.
>
> B.  Only the holdings of the Supreme Court, rather than its dicta, may be considered.
>
> C.  The state court decision may be overturned only if:
>
>> 1.  It '[applies] a rule that contradicts the governing law set forth in [Supreme Court of the United States] cases,' [the Supreme Court precedent must exist at the time of petitioner's direct appeal] or;
>>
>> 2.  the state-court decision 'confronts a set of facts that are materially indistinguishable from a decision of [the Supreme Court] and nevertheless arrives at a result different from [Supreme Court] precedent;' or
>>
>> 3.  'the state court identifies the correct governing legal rule from [the Supreme] Court's cases but unreasonably applies it to the facts of the particular state prisoner's case;' or
>>
>> 4.  the state court 'either unreasonably extends a legal principle from [a Supreme Court] precedent to a new context where it should not apply or unreasonably refuses to extend that principle to a new context where it should apply.'
>
> D.  Throughout this analysis the federal court may not merely apply its own views of what the law should be. Rather, to be overturned, a state court's application of Supreme Court of the United States precedent must also be objectively unreasonable.  That is to say, that 'a federal habeas court may not issue the writ simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly.'  'An unreasonable application of federal law is different from an incorrect or erroneous application of federal law.'
>
> E.  Findings of fact of the state courts are presumed to be correct. 'The applicant shall have the burden of rebutting the presumption of correctness by clear and convincing evidence.'

*Bailey v. Mitchell,* 271 F.3d 652, 655-56 (6th Cir. 2001) (internal citations omitted).

Finally, a reviewing federal court is bound by the presumption of correctness, under which the federal court is obligated to "accept a state court's interpretation of the state's statutes and rules

of practice." *Hutchinson v. Marshall*, 744 F.2d 44, 46 (6th Cir. 1984), *cert. denied*, 469 U.S. 1221 (1985); *see also Duffel v. Duttion*, 785 F.2d 131, 133 (6th Cir. 1986).  The presumption of correctness is set forth in 28 U.S.C. § 2254(e), which provides:

> (e)(1)In a proceeding instituted by an application for a writ of habeas corpus by a person in custody pursuant to the judgment of a State court, a determination of a factual issue made by a State court shall be presumed to be correct.

28 U.S.C. § 2254(e).  The presumption of correctness applies to basic primary facts, and not to mixed questions of law and fact. *Levine v. Torvik*, 986 F.2d 1506, 1514 (6th Cir. 1993), *cert. denied,* 509 U.S. 907 (1993).  The presumption also applies to "implicit findings of fact, logically deduced because of the trial court's ability to adjudge the witnesses' demeanor and credibility." *McQueen v. Scroggy*, 99 F.3d 1302, 1310 (6th Cir. 1996), *cert. denied*, 520 U.S. 1257 (1997).  Furthermore, 672,676, n.4 (6th Cir. 2000).  Petitioner has the burden of rebutting the presumption of correctness by clear and convincing evidence.  28 U.S.C. § 2254(e)(1).

The United States Supreme Court recently observed:

> Section 2254(d) reflects the view that habeas corpus is a "guard against extreme malfunctions in the state criminal justice systems," not a substitute for ordinary error correction through appeal. *Jackson v. Virginia*, 443 U.S. 307, 332, n. 5, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979) (Stevens, J., concurring in judgment).  As a condition for obtaining habeas corpus from a federal court, a state prisoner must show that the state court's ruling on the claim being presented in federal court was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement.

*Harrington v. Richter,* __ U.S. __, 131 S.Ct. 770, 786-787 (2011).

## VI.    ANALYSIS

### A.  Ground One

In Ground One, Petitioner contends that his right to due process was violated when the trial court admitted the testimony of Detective Regina Lester, who he characterizes as an "unqualified expert witness."  ECF Dkt. #12 at 903.  He further contends that the sole purpose of her testimony was the bolster the testimony of the victims in this case. To be entitled to relief in federal habeas corpus a petitioner must establish that there has been infringement of a right guaranteed under the United States Constitution. *Clemmons v. Sowders*, 34 F.3d 352, 357 (6th Cir.1994).  As a general rule, an error in the admissibility of evidence does not constitute such a denial, as such errors are

matters of state law not cognizable in habeas corpus.  *Byrd v. Collins*, 209 F.3d 486, 528 (6th Cir.2000), cert. denied, 531 U.S. 1082, 121 S.Ct. 786, 148 L.Ed.2d 682 (2001).  Under the AEDPA the states have wide latitude in ruling on evidentiary matters.  *Seymour v. Walker*, 224 F.3d 542 (6th Cir.2000), cert. denied, 532 U.S. 989, 121 S.Ct. 1643, 149 L.Ed.2d 502 (2001).  In considering petitioner's habeas corpus petition, a federal court may not grant such petition merely because it disagrees with the evidentiary rulings of the state courts, but may only grant relief if the state court's evidentiary rulings were contrary to rulings of the United State Supreme Court on a similar question of law or if the state courts decided the evidentiary issues differently than the Supreme Court in a case with materially indistinguishable facts.  *Sanders v. Freeman*, 221 F.3d 846 (6th Cir.2000).

The Sixth District provided the following analysis of Petitioner's due process claim based upon the admission of Detective Lester's testimony:

> {¶ 11} Detective Regina Lester is assigned to the special victims unit of the Investigation Unit of the Toledo Police Department.  At the time of the trial below, she had been in that capacity for six and a half years, investigating 130 to 170 cases of child sexual abuse and/or exploitation a year.  Detective Lester stated that she has testified in 10 to 12 trials and that in two of those cases she was declared an expert in child sexual exploitation.  She testified that she received this case on June 20, 2005, and that, consistent with her protocol, she first interviewed the victims' mother, K., who had filed the police report.  From K., she obtained background information on the family and learned how the allegations were brought to her attention.  She then interviewed A.J. and T.J. separately.  Based on the information she learned in the interviews, Detective Lester prepared a report and contacted Lori Olender, a prosecutor who handles all of the child sexual abuse cases in the Lucas County Prosecutor's Office, who presented the case to the Grand Jury.

> {¶ 12} During the state's direct examination of Lester, however, the state attempted to elicit testimony on the subject of delayed disclosure of sexual abuse.  Following objection by appellant, the prosecutor asserted that Lester was an expert in child interviews and disclosures made by children in sexual abuse cases.  The prosecutor contended that Lester would not be offering any opinions as to the truthfulness of the victims' statements but would testify as to the interview and disclosure process and that disclosures typically come in different forms over time, thereby explaining why there could be differences in a victim's statements over time.  The court questioned whether this was a proper subject for expert testimony and ultimately, the state determined that it would not seek to have Lester qualified as an expert.  In further arguments before the court, however, the state indicated that it wanted to ask Lester to define delayed disclosure and to explain why someone, particularly a child sexual abuse victim, might delay disclosing the abuse.  The court specified that it would not allow Lester's testimony to bolster the credibility of the victims.  The direct examination of Lester then continued.  After reviewing Lester's education and training, the state then questioned her as follows:

> {¶ 13} "Q. Now, what is delayed disclosure?

{¶ 14} "A. Delayed disclosure could be two things, a disclosure that an individual doesn't make right away, or a disclosure from a repressed memory case that they initially have no recollection but something jars their memory so again that disclosure is delayed too.

{¶ 15} "Q. Why might there be delayed disclosure?

{¶ 16} "MR. GELLER: Objection.

{¶ 17} " * * *

{¶ 18} "THE COURT: That will be overruled just as to this specific question and/or issues.

{¶ 19} "A. Delayed disclosure may occur for various reasons depending on the individual. Looking at children, and I take children from small children through their adolescent years. One could be fear of abandonment, fear of people not believing them, fear of loss of love from the offender. There could be fear of reprisal from other family members. People judging them, fear of not being believed.

{¶ 20} "And with the judging goes fear that at times with adolescents there could be some consensual acts that are indicated so again fear of not being believed and reprisal and that loss of family and love.

{¶ 21} " * * *

{¶ 22} "Q. Yes, sir. Do subsequent-after there is an initial disclosure are there sometimes other disclosures?

{¶ 23} "A. Yes.

{¶ 24} "Q. With subsequent disclosures, what is their relationship as to the first disclosure?

{¶ 25} "MR. GELLER: Object to the nature of the question the way it is asked. It is not clear.

{¶ 26} " * * *

{¶ 27} "THE COURT: Okay. Objection will be overruled. Yes.

{¶ 28} "A. Because something like sex is very private. It isn't something that we talk about to the person sitting next to us everyday whether we know or don't know them. Same thing goes for anyone, whether it be a small child who doesn't realize that it's wrong, to a teenager who is either not comfortable or not familiar with the person they are talking to, that's-I think that is just human nature in itself.

{¶ 29} "That disclosure could continue or be – I say disclosing is more I guess of a process so to speak that the child feels more comfortable, when they don't – when they have – they don't have fear of reprisal. When they have a strong support system it makes it easier for the child to continue on with what happened.

-16-

{¶ 30} "Also sexual abuse that occurred over a period of time, there is so much involved in that, and it's very difficult for an individual to condense that to a half hour or 45 minute interview. Hence we know that it's as the process continues, the legal process, that the child may remember additional facts that happened or just feel more comfortable in discussing more about what happened to them."

. . .

{¶ 33} In his first assignment of error, appellant asserts that the lower court erred in permitting Detective Lester to testify as an expert witness on the issue of delayed disclosure.  Appellant contends that the state never laid a proper foundation to qualify Lester as an expert in delayed disclosure and that the testimony only had the effect of bolstering the victims' testimony. The state counters that Detective Lester was never declared to be an expert witness but that her testimony on the issue of delayed disclosure was admissible under Evid.R. 701.

{¶ 34} We first note that "[t]he admission or exclusion of relevant evidence rests within the sound discretion of the trial court." *State v. Sage* (1987), 31 Ohio St.3d 173, 510 N.E.2d 343, paragraph two of the syllabus.  This court, therefore, will not reverse a trial court's ruling regarding the admission or exclusion of evidence unless the trial court abused its discretion.  An abuse of discretion "connotes more than an error of law or of judgment; it implies that the court's attitude is unreasonable, arbitrary or unconscionable." *State v. Adams* (1980), 62 Ohio St.2d 151, 157, 404 N.E.2d 144.

{¶ 35} We must first determine if Detective Lester's testimony was lay opinion or expert testimony. Lay witness opinion testimony is "limited to those opinions or inferences which are (1) rationally based on the perception of the witness and (2) helpful to a clear understanding of his testimony or the determination of a fact in issue." Evid.R. 701. In contrast, Evid.R. 702 provides in relevant part that "[a] witness may testify as an expert if all of the following apply:

    {¶ 36} "(A) The witness' testimony either relates to matters beyond the knowledge or experience possessed by lay persons or dispels a misconception common among lay persons;

    {¶ 37} "(B) The witness is qualified as an expert by specialized knowledge, skill, experience, training, or education regarding the subject matter of the testimony;

    {¶ 38} "(C) The witness' testimony is based on reliable scientific, technical, or other specialized information."

{¶ 39} This court recently addressed the very same issue now raised by appellant in his first assignment of error.  In *State v. Frost*, 6th Dist. Nos. L-06-1142 & L-06-1143, 2007-Ohio-3469, we discussed whether Detective Lester was qualified as an expert witness in child sexual abuse.  Although, as appellant points out, the defense in that case stipulated to the detective's qualifications in the area of sexual assault and sexual abuse investigation, we determined that Detective Lester's testimony regarding the issues of re-victimization, conditioning, and delayed reporting in child sexual abuse cases was not plain error.  Our determination was based on the fact that the detective possessed a degree of "specialized knowledge" in the area of child sexual abuse based on training and on-the-job experience which included 21 years as a police officer and six years investigating sex offenses. *Id.* at ¶42.

-17-

{¶ 40} Similarly, in *State v. Solether*, 6th Dist. No. WD-07-053, 2008-Ohio-4738, we held that an officer who testified about delayed reporting, and whose testimony was based largely upon his personal experience, was qualified as an expert. We reached this conclusion upon determining that the fact that delayed reporting by sexual assault victims is not uncommon is not within the knowledge of the average juror. *Id.* at ¶ 65. Accordingly, we found that the officer's testimony required "specialized knowledge" and was properly categorized as expert testimony.

{¶ 41} A number of other Ohio District Courts of Appeals have also concluded that the manner in which child victims of sexual abuse disclose and report that abuse is beyond the knowledge and experience of lay persons. *State v. Bortner*, 9th Dist. No. 02CA008189, 2003-Ohio-3508; *State v. Carey*, 2d Dist. No.2002-CA-70, 2003-Ohio-2684; *State v. Carte* (Jan. 14, 1999), 8th Dist. No. 72955; *State v. James* (Aug. 24, 1995), 3d Dist. No. 6-94-18.

{¶ 42} A review of the record discloses that Detective Lester was qualified as an expert by specialized knowledge, skill, experience, training, and education regarding child sexual abuse and that her testimony regarding delayed disclosure of abuse was based on that specialized information.

{¶ 43} Accordingly, although the lower court did not expressly determine that Detective Lester was an expert in child sexual abuse, we cannot say that the lower court abused its discretion in allowing Lester to testify as an expert witness on delayed disclosure and the reasons for it. In so holding, we note that Detective Lester only defined delayed disclosure for the jury and explained why a victim might delay in disclosing the abuse. She did not express an opinion as to whether the two victims in this case had been subjected to such abuse. The first assignment of error is not well-taken.

{¶ 44} In his second assignment of error, appellant asserts that the lower court further abused its discretion in allowing Detective Lester to testify because her testimony only served to improperly bolster the testimony of the victims. Appellant cites to the portion of Lester's testimony that we have quoted above in support of his argument.

{¶ 45} In *State v. Boston* (1989), 46 Ohio St.3d 108, 545 N.E.2d 1220, modified on other grounds by *State v. Dever* (1992), 64 Ohio St.3d 401, 596 N.E.2d 436, the Supreme Court of Ohio held that in cases involving alleged child abuse, "the use of expert testimony is perfectly proper and such experts are not limited just to persons with scientific or technical knowledge but also include other persons with 'specialized knowledge' gained through experience, training or education." Id. at 126, 596 N.E.2d 436. (Emphasis added.) The expert witness, however, "may not testify as to the expert's opinion of the veracity of the statements of a child declarant." *Id.* at syllabus.

{¶ 46} At the trial below, Lester testified about investigation protocols, the investigation of this case in general, and the statements quoted above. Lester did not opine as to whether she believed the victims were telling the truth. She simply testified in general about delayed disclosure. That testimony did not improperly bolster the victims' credibility. See *State v. Moore* (Feb. 7, 2001), 9th Dist. No. 00CA007587; *State v. Demiduk* (June 24, 1998), 7th Dist. No. 96-C0-16; *State v. Ritchie* (Apr. 2, 1997), 9th Dist. No. 95CA006211. The second assignment of error is not well-taken.

*McGlown*, supra.

While it is true that the state did not offer Detective Lester's testimony as expert testimony, the trial court ultimately permitted her to testify on a matter beyond the knowledge or experience possessed by lay persons, for which she relied upon her own specialized knowledge of the subject matter.  Even though her testimony was ultimately characterized as expert testimony by the Sixth District, the foregoing facts do not demonstrate a constitutional violation.  Petitioner has not identified a United States Supreme Court case with similar facts.  Furthermore, as the Sixth District correctly observed, Detective Lester limited her testimony to her previous experience with child rape victims, and never expressed an opinion about the veracity of the rape and gross sexual imposition victims in the above-captioned case.  Accordingly, Ground One should be dismissed.

### **B.  Ground Two**

In Ground Two, Petitioner argues that his rights to due process and a fair trial were violated by prosecutorial misconduct where during summation the prosecutor vouched for the credibility of the victims.  "In the evaluation of a claim for prosecutorial misconduct, it is not enough that the prosecutor's comments were improper, but the relevant question is whether the prosecutors' comments so infected the trial with unfairness as to make the resulting conviction a denial of due process," see *Smith v. Mitchell*, 567 F.3d 246, 255 (6th Cir.2009) (internal quotation marks and editorial marks omitted); see also *Donnelly v. DeChristoforo*, 416 U.S. 637, 643, 94 S.Ct. 1868, 40 L.Ed.2d 431 (1974); *Darden v. Wainwright*, 477 U.S. 168, 106 S.Ct. 2464, 91 L.Ed.2d 144 (1986); *Wogenstahl v. Mitchell*, 668 F.3d 307, 327–328 (6th Cir.2012); *Bates v. Bell*, 402 F.3d 635, 640–41 (6th Cir.2005); *Kincade v. Sparkman*, 175 F.3d 444 (6th Cir.1999), or whether it was "so egregious as to render the entire trial fundamentally unfair." *Cook v. Bordenkircher*, 602 F.2d 117 (6th Cir.1979); accord *Summitt v. Bordenkircher*, 608 F.2d 247 (6th Cir.1979), aff'd sub nom, *Watkins v. Sowders*, 449 U.S. 341, 101 S.Ct. 654, 66 L.Ed.2d 549 (1981); *Stumbo v. Seabold*, 704 F.2d 910 (6th Cir.1983).

Courts apply a "two-part test to determine whether the state court reasonably applied the federal standard in holding that prosecutorial misconduct did not render [the] trial fundamentally unfair." *Irick v. Bell*, 565 F.3d 315, 324 (6th Cir.2009).  The Court must first determine whether the prosecution's conduct was improper.  *Id.*  Second, the Court must determine whether that improper

conduct was flagrant by considering four factors: (1) whether the evidence against the defendant was strong; (2) whether the conduct of the prosecution tended to mislead the jury or prejudice the defendant; (3) whether the conduct or remarks were isolated or extensive; and (4) whether the remarks were made deliberately or accidentally. *Id.*

"Improper vouching occurs when a prosecutor supports the credibility of a witness by indicating a personal belief in the witness's credibility thereby placing the prestige of the [government] behind that witness." *Johnson v. Bell*, 525 F.3d 466, 482 (6th Cir.2008) (quoting *United States v. Francis*, 170 F.3d 546, 550 (6th Cir.1999)). "Generally, improper vouching involves either blunt comments or comments that imply that the prosecutor has special knowledge of facts not in front of the jury or of the credibility and truthfulness of witnesses and their testimony." *Francis*, 170 F.3d at 550 (internal citations omitted). "It is patently improper for a prosecutor either to comment on the credibility of a witness or to express a personal belief that a particular witness is lying." *Hodge v. Hurley*, 426 F.3d 368, 378 (6th Cir.2005)(citing *United States v. Young*, 470 U.S. 1, 17–19, 105 S.Ct. 1038, 84 L.Ed.2d 1 (1985)).

The Sixth District provided the following analysis of Petitioner's prosecutorial misconduct assertions:

> {¶ 47} Finally, in his third assignment of error, appellant contends that his right to a fair trial was violated when the prosecutor made an improper comment about one of the victims during his closing argument.

> {¶ 48} The comment to which appellant refers was as follows: "Oh, Mr. Geller points out to you that A[.] was depressed. If you had been raped for three years would you be depressed? I would be depressed." Appellant's counsel objected to the statement and the court sustained the objection.

> {¶ 49} Generally, a prosecutor's conduct at trial is not grounds for reversal unless that conduct deprived the defendant of a fair trial. *State v. Loza* (1994), 71 Ohio St.3d 61, 78, 641 N.E.2d 1082, overruled on other grounds. "The test for prosecutorial misconduct is whether the remarks were improper and, if so, whether they prejudicially affected substantial rights of the accused." *State v. Eley* (1996), 77 Ohio St.3d 174, 187, 672 N.E.2d 640, overruled on other grounds; *State v. Lott* (1990), 51 Ohio St.3d 160, 555 N.E.2d 293.

> {¶ 50} Prosecutors generally are entitled to considerable latitude in opening statement and closing arguments. *State v. Ballew* (1996), 76 Ohio St.3d 244, 255, 667 N.E.2d 369. In closing argument, a prosecutor may comment freely on "what the evidence has shown and what inferences can be drawn therefrom." *State v. Richey* (1992), 64 Ohio St.3d 353, 362, 595 N.E.2d 915, overruled on other grounds; *State v. McGuire* (1997), 80 Ohio St.3d 390, 402-404, 686 N.E.2d 1112. Prosecutors may

not, however, invade the realm of the jury by rendering their personal beliefs regarding guilt and credibility, or alluding to matters outside of the record. *State v. Smith* (1984), 14 Ohio St.3d 13, 14, 470 N.E.2d 883. Nevertheless, since isolated instances of prosecutorial misconduct are usually harmless, any alleged misconduct in the closing argument must be viewed within the context of the entire trial to determine if any prejudice has occurred. See *Ballew*, supra at 255, 667 N.E.2d 369; *State v. Lorraine* (1993), 66 Ohio St.3d 414, 420, 613 N.E.2d 212. To determine if the alleged misconduct resulted in prejudice, an appellate court should consider the following factors: "(1) the nature of the remarks, (2) whether an objection was made by counsel, (3) whether corrective instructions were given by the court, and (4) the strength of the evidence against the defendant." *State v. Braxton* (1995), 102 Ohio App.3d 28, 41, 656 N.E.2d 970.

{¶ 51} While we recognize that the prosecutor improperly expressed his personal beliefs regarding guilt and credibility through the comment at issue, we cannot say, upon reviewing the prosecutor's closing argument as a whole, that appellant's right to a fair trial was prejudicially affected. Appellant's trial counsel promptly objected to the comment and the trial court sustained the objection. Moreover, the evidence against appellant, through the testimony of the two victims, was compelling. The third assignment of error is not well-taken.

*McGlown,* supra.

The Sixth District correctly observed that although prosecutor's comments were improper, they were by no means flagrant. Although the comment was made deliberately, it neither mislead the jury nor prejudiced the defendant, and the comment was isolated rather than extensive. Furthermore, trial counsel objected to the prosecutor's statement and the trial court sustained the objection. Moreover, the victims provided compelling and detailed testimony regarding Petitioner's abuse. As a consequence, the evidence against Petitioner was strong. Therefore, the undersigned recommends that the Court conclude that Ground Two does not have merit.

### **C. Ground Three and Four**

Because Petitioner asserted his sufficiency of the evidence challenges in Grounds Three and Four for the first time in his Motion to Reopen his Appeal, and he did not appeal the decision of the Sixth District to the Supreme Court of Ohio within the 45-day deadline[4], he should not be able raise them now because they are barred by the doctrine of *res judicata*. In recognition of the equal obligation of the state courts to protect the constitutional rights of criminal defendants, and in order

---

[4]Ohio Supreme Court Rule of Practice 2.2(A)(4)(c), reads in pertinent part, "The provision for delayed appeal does not apply to appeals involving postconviction-relief or appeals brought pursuant to App. R. 26(B). The Clerk shall refuse to file motions for delayed appeal involving postconviction-relief or App. R. 26(B)." Accordingly, Petitioner may not file a delayed appeal of his 26(b) motion.

to prevent friction between the state and federal courts, a state criminal defendant with federal constitutional claims is required fairly to present those claims to the highest court of the state for consideration. 28 U.S.C. § 2254(b), (c).  If he fails to do so, but still has an avenue open to him by which he may present the claims, his petition is subject to dismissal for failure to exhaust state remedies.  *Id.*; *Anderson v. Harless*, 459 U.S. 4, 6 (1982) (per curiam); *Picard v. Connor*, 404 U.S. 270, 275–76 (1971). If, because of a procedural default, the petitioner can no longer present his claims to a state court, he has also waived them for purposes of federal habeas review unless he can demonstrate cause for the procedural default and actual prejudice resulting from the alleged constitutional error.  *Murray v. Carrier*, 477 U.S. 478, 485 (1986); *Engle v. Isaac*, 456 U.S. 107, 129 (1982); *Wainwright v. Sykes*, 433 U.S. 72, 87 (1977).  Here, the state courts were never given an opportunity to enforce the procedural rule at issue due to the nature of Petitioner's procedural default.

Ohio's *res judicata* rule is adequate and independent under the third part of the *Maupin* test. To be "independent," the procedural rule at issue, as well as the state court's reliance thereon, must rely in no part on federal law. See *Coleman v. Thompson*, 501 U.S. 722, 732–33 (1991). To be "adequate," the state procedural rule must be firmly established and regularly followed by the state courts.  *Ford v. Georgia*, 498 U.S. 411 (1991). "[O]nly a 'firmly established and regularly followed state practice' may be interposed by a State to prevent subsequent review by this Court of a federal constitutional claim." *Id.* at 423 (quoting *James v. Kentucky*, 466 U.S. 341, 348–351 (1984)); see also *Barr v. City of Columbia*, 378 U.S. 146, 149 (1964); *NAACP v. Alabama ex rel. Flowers*, 377 U.S. 288, 297 (1964).

The Sixth Circuit has consistently held that Ohio's doctrine of *res judicata* is an adequate ground for denying federal habeas relief.  *Lundgren v. Mitchell*, 440 F.3d 754, 765 (6th Cir.2006); *Coleman v. Mitchell*, 268 F.3d 417, 427–29 (6th Cir.2001); *Seymour v. Walker*, 224 F.3d 542, 555 (6th Cir.2000); *Byrd v. Collins*, 209 F.3d 486, 521–22 (6th Cir.2000); *Norris v. Schotten*, 146 F.3d 314, 332 (6th Cir.1998). Ohio courts have consistently refused, in reliance on the doctrine of res judicata, to review the merits of claims because they are procedurally barred.  See *State v. Cole*, 2 Ohio St.3d 112 (1982); *State v. Ishmail*, 67 Ohio St.2d 16 (1981).  Additionally, the doctrine of *res*

-22-

*judicata* serves the state's interest in finality and in ensuring that claims are adjudicated at the earliest possible opportunity.

Petitioner may still obtain review of this claim on the merits if he establishes cause for his procedural default, as well as actual prejudice from the alleged constitutional violation. " '[C]ause' under the cause and prejudice test must be something external to the petitioner, something that cannot fairly be attributed to him [;] ... some objective factor external to the defense [that] impeded ... efforts to comply with the State's procedural rule." *Coleman v. Thompson*, 501 U.S. 722, 753, (1991). The constitutionally ineffective assistance of counsel may constitute cause for a procedural default. *Edwards v. Carpenter*, 529 U.S. 446, 451 (2000) (citing *Murray v. Carrier*, 477 U.S. 478, 488–89 (1986)). However, ineffective assistance of counsel cannot constitute cause where, as here, there was no constitutional right to counsel in the proceeding in question. There is no constitutional right to counsel in state post-conviction proceedings. See *Gulertekin v. Tinnelman–Cooper*, 340 F.3d 415, 425 (6th Cir.2003)(citing *Coleman v. Thompson*, 501 U.S. 722, 752–53 (1991); *Pennsylvania v. Finley*, 481 U.S. 551, 555 (1987) ("[T]he right to counsel extends to the first appeal of right, and no further."); *Lopez v. Wilson*, 426 F.3d 339, 352 (6th Cir.2005)("26(B) applications are best classified as parts of collateral review under AEDPA").

Beyond the four-part *Maupin* analysis, a habeas court is required to consider whether this is "an extraordinary case, where a constitutional violation has probably resulted in the conviction of one who is actually innocent." *Murray v. Carrier*, 477 U.S. 471, 496 (1986); see also *Sawyer v. Whitley*, 505 U.S. 333 (1992).

> [I]f a habeas petitioner "presents evidence of innocence so strong that a court cannot have confidence in the outcome of the trial unless the court is also satisfied that the trial was free of nonharmless constitutional error, the petitioner should be allowed to pass through the gateway and argue the merits of his underlying claims." *Schlup*, 513 U.S. at 316, 115 S.Ct. 851, 130 L.Ed.2d 808. Thus, the threshold inquiry is whether "new facts raise [ ] sufficient doubt about [the petitioner's] guilt to undermine confidence in the result of the trial." *Id.* at 317, 513 U.S. 298, 115 S.Ct. 851, 130 L.Ed.2d 808. To establish actual innocence, "a petitioner must show that it is more likely than not that no reasonable juror would have found petitioner guilty beyond a reasonable doubt." *Id.* at 327, 513 U.S. 298, 115 S.Ct. 851, 130 L.Ed.2d 808. The Court has noted that "actual innocence means factual innocence, not mere legal insufficiency." *Bousley v. United States*, 523 U.S. 614, 623, 118 S.Ct. 1604, 140 L.Ed.2d 828 (1998). "To be credible, such a claim requires petitioner to support his allegations of constitutional error with new reliable evidence-whether it be exculpatory scientific evidence, trustworthy eyewitness accounts, or critical physical

evidence-that was not presented at trial." *Schlup*, 513 U.S. at 324, 115 S.Ct. 851, 130 L.Ed.2d 808. The Court counseled however, that the actual innocence exception should "remain rare" and "only be applied in the 'extraordinary case.'" *Id.* at 321, 513 U.S. 298, 115 S.Ct. 851, 130 L.Ed.2d 808.

*Souter v. Jones*, 395 F.3d 577, 589–90 (6th Cir.2005). Petitioner has not met this standard.  In conclusion, the undersigned recommends that the Court conclude that Grounds Three an Four should be denied.

## VII.   CONCLUSION AND RECOMMENDATION

For the foregoing reasons, the undersigned RECOMMENDS that the Court DISMISS the instant petition in its entirety with prejudice.


DATE: May 3, 2012

_____*/s/George J. Limbert*_____
GEORGE J. LIMBERT
UNITED STATES MAGISTRATE JUDGE

ANY OBJECTIONS to this Report and Recommendation must be filed with the Clerk of Court within fourteen (14) days of service of this notice. Fed. R. Civ. P. 72; L.R. 72.3. Failure to file objections within the specified time WAIVES the right to appeal the Magistrate Judge's recommendation. L.R. 72.3(b).